v. Donshay Jones Okay, Mr. Hatch, take whatever time you need to get settled. I'm ready, Your Honor. Good morning, and may it please the Court. My name is Darren Hatch. Along with my co-counsel, Robert Reagan, I represent the appellant, Donshay Jones. There are two issues before the Court today. First, whether the carjacking statute is unconstitutional under the Commerce Clause as applied to this case. And second, whether carjacking is a crime of violence as defined under Section 924C3. Haven't we decided the constitutionality? Your Honor, actually I was – you're referring to the constitutionality under the Commerce Clause? Under the Commerce Clause. Yes, Your Honor, there is – there are quite a few cases in the Fifth Circuit dealing with carjacking. The Fifth Circuit has concluded that carjacking is constitutional under the Commerce Clause. Our argument is different today. Our argument is that the carjacking statute is unconstitutional as applied to this case and the facts in this case. That does bring me, however, to just briefly, before I continue, the crime of violence issue under 924C3. This Court, in Gonzales-Longoria, the en banc decision, I think fairly precludes that issue in this case. I think that covers this case. And so I'm going to address the Commerce Clause issue, but I'm certainly prepared to answer any questions regarding 924C3. So you're not making an argument that the unconstitutional vagueness under 924C3B survives Gonzales-Longoria? I don't believe that it does. Okay. So you – but you're making an argument that you're not bound by United States v. Coleman, for example, on your carjacking because you believe you have a specific as applied factual scenario. Is that right? That's exactly right. And what is that specific as applied factual scenario? Well, Your Honor, I think the reason this case is unconstitutional as applied, there are three reasons. Number one, there is no evidence that the carjacking in this case had any connection to commerce or an economic enterprise. Number two, the evidence that the car that was eventually carjacked was transported, shipped, or received in interstate commerce is so attenuated from the actual carjacking that it bears no relation to commerce. Don't we have a case, though, that uses that kind of just as the reason, some passing statement? That second reason that I just mentioned essentially goes to the jurisdictional element of the carjacking statute, which I'll concede is a very broad – it's a broad jurisdictional statement. Our argument is that regardless of how broad it is, there is a limit under the Commerce Clause to Congress's power. Our argument is the facts under this case are outside of that limit. And as far as the court – Is it your argument that they didn't put on their evidence that satisfies the second prong of this – I mean, do they make the jurisdictional showing even cursorily? You're referring to this case? In this particular case. The evidence in this case for that was that the vehicle was shipped from Michigan to Texas in October, I believe, of 2008. Mr. Jones did plead guilty. The appellant did plead guilty. Part of the factual resume included the statement along those lines. However, Mr. Jones, in his factual resume, conceded – and we concede – and it's not an issue that the vehicle was transported from Michigan to Texas, to a dealership in Texas. So that's not an issue. It wasn't one where they forgot to make the jurisdictional showing, which there are those cases. They did it in the factual basis, and that sort of attenuated thing has been held enough for jurisdiction. Well, I would say that they – the purpose of the jurisdictional element is to prevent a facial challenge to the statute. Now, the Fifth Circuit – let's take Coleman, for example. The Coleman court analyzed that case under the third prong of Lopez, which is the substantial effects test. The Coleman court really didn't address what jurisdictional elements the government proved in that case other than to just say that the statute has a jurisdictional element, and that was it. And the previous – the court's previous cases dealing with carjacking, based on my research, didn't really get into what exactly – what element was proven to establish that. What was your third reason? The third reason, Your Honor, relates to the congressional findings, and again, this is under the substantial effects test. I think there is some disagreement among the courts about what exactly the congressional findings were. However, regardless of what the congressional findings were relating to the carjacking case, I don't think that they established that a rational basis exists to conclude that the carjacking in this case would have a substantial effect on interstate commerce. Do you think our case law would allow us to fine for you on any one of these three, or are you making this really to preserve it for the Supreme Court? No, Your Honor. I think since our argument and our position is that the carjacking statute is unconstitutional as applied to this case, it would allow the court to make a ruling and not overrule its prior cases. I think that the court can – these facts are pretty specific, and so I think a holding in the appellant's favor could be limited to the facts of this case. And I think those facts – and I know the court has read the brief and is well versed in it – but the vehicle was transported from Michigan to Texas in October of 2008. That vehicle was sold four times between being shipped to Texas and the time it was ultimately purchased by the victim. Our position is that once it was brought to Texas and sold to a consumer, that removed it from commerce. That affects the attenuation to the shipment to Texas. Has any court ever held that anywhere? Your Honor, I have not found a case that has applied the ultimate consumer doctrine to a carjacking context. In any context that deals with the commerce – we've got a lot of criminal statutes that have this part – in any context at all said that if something's been sold repeatedly intrastate, that it's no longer interstate commerce? It's been held in the context of a fair labor standards case. Right. Other than that, but not in any criminal case in this way. Judge DeMoss – and that was a Hobbs Act case – Judge DeMoss in his concurring opinion did note that the cash that was ultimately stolen or robbed from the convenience store at issue was in the hands of an ultimate consumer and therefore didn't affect commerce. So although a court has never held that, I don't think it's completely out of the realm of… And we have cautioned that there are some limits and some parameters even in our recent case involving the Louisiana court system. We said if you did this, this would be outside. Go ahead. So I think, yes, the ultimate consumer has not been applied to the carjacking case that I'm aware of. But as Judge DeMoss noted, it is something that would allow the court to draw a line, and there has to be a line somewhere. Is the distinction that you're drawing a distinction of kind or a distinction of degree? For example, what if the shipment from Michigan occurred only a few days before the commission of the crime? Would that – in that hypothetical, would that make a difference? I think it could. I think the short answer is it could make a difference. So I think my argument is more of a degree. There has to be, as I mentioned previously, a line somewhere. So, yes, a time attenuation to the time it's shipped from out of state to Texas I think could be a factor, but I think there's also other factors. What did the vehicle do once it got to Texas? I mean, it certainly could have an interstate commerce effect after it arrives. There's no evidence of that in this case. The only evidence of any sort of interstate connection would be that transportation from Michigan to Texas five and a half years before the carjacking. And so the jurisdictional element I think, although broad, does have limits. And I would point the court to U.S. v. Stanley. That's at 607 F. 2nd, 1311. That's out of the Tenth Circuit from 1979. That dealt with the federal arson statute. And the jurisdictional element in the arson statute is different from the carjacking, but it essentially applied to the use of anything in interstate commerce or any action affecting interstate commerce. Now, the facts in that case were a little bit disturbing. I'd say more than a little bit disturbing. Two partners up in California decided they wanted to try to assassinate a judge by blowing up his pickup truck. Not a good thing. I'm sorry? Not a good thing. No, not at all. The government attempted to establish jurisdiction by showing that the judge's truck that was the target of this attempted murder of the judge had an effect on interstate commerce. The Tenth Circuit held that because the car was used for travel by the judge to different parts of Oklahoma to tend to his judge business did not implicate interstate commerce. And the court noted that although affecting interstate commerce is broad, it's not limitless and must bear some relation to commerce. And that's essentially, I think that reasoning can be applied to the jurisdictional element of the carjacking case, that there must be some relation to interstate commerce. And shipping the vehicle from Michigan to Texas five and a half years before the carjacking, we think, removes that or is so far attenuated that it's virtually meaningless. If you were to, if you were assuming argumentative prevail, would, because it wasn't really articulated in this way, would they have a chance to put on evidence at some other, or would you discount just being completely dismissed? I'm afraid I didn't understand. I'm wondering, would they have a chance to put on evidence that in this particular circumstance there is some kind of commerce or did they already have their chance and it's over? You're asking if they essentially have another bite of the apple? Yes. Do they have another bite of the apple because this wasn't really flushed out in any kind of detailed way? Or do you think it was flushed out in a detailed way? Well, the answer is I don't know if they would have another bite of the apple, but there are other facts that I think that if they could prove would establish a connection to interstate commerce, like I mentioned previously. What happened to the vehicle after it arrived? Or, for example, once the carjacking took place, is there any connection to interstate commerce there? For example, was it going to be taken across state lines to go gambling in Shreveport? Was it going to be taken to a garage and chopped up? There's no evidence of that yet, but the government relied on that one small attenuated fact to apply federal jurisdiction in this case. And the appellant's position is that is way too far the outer limits of the government's commerce laws. Thank you, Mr. Hadley. You saved time for a vote. Yes, thank you. Mr. Hendricks? May it please the Court? Wes Hendricks on behalf of the United States. This Court should affirm the District Court's judgment because both issues raised are foreclosed. On the first issue, this Court has consistently rejected challenges to carjacking convictions based on the Commerce Clause, including arguments phrased as as-applied challenges. On the second issue, we now have a concession that Gonzalez-Longoria, and now coupled with this Court's recent decision in Chapman, the argument that C-3B is unconstitutionally vague is foreclosed. This Court could also rule that C-3A also is satisfied because carjacking is a crime of violence in satisfaction of the Elements Clause. Just because we've rejected other as-applied challenges, why is this as-applied challenge foreclosed? It would seem like our en banc opinion about our – why is that foreclosed? It's foreclosed because carjacking and the way the statute is written is materially different than, say, Hobbs Act cases where we have en banc decisions from this Court saying, look, depending on the facts, what affects interstate commerce and what doesn't affect interstate commerce. This statute isn't a substantial effect on interstate commerce within the statute. This is, is the car shipped, transported, or received in interstate commerce? And if so, and the other elements are shown by the government, categorically that activity as a whole always affects interstate commerce. So there's no way that it could be removed from interstate commerce after the fact? Under – for a carjacking offense, no. And this court in Harris made that finding and made that explanation. Specifically, the court quoted at length a Sixth Circuit opinion called Johnson that addressed this very type of as-applied challenge. Okay, I understand. Facially, I'm not going to get very far. But, hey, stay with me. As-applied, this car has been in this state for a long time, and this was a joyride, so go out and win. This court rejected that in Harris, again, relying on the Johnson case from the Sixth Circuit. The court explained that if the regulated activity, carjacking, can have a substantial effect on interstate commerce, quote, it makes no difference that the transported item is now at rest and is no longer in interstate commerce. It makes no difference. That is, to me, it is a broad categorical explanation and a rejection of as-applied arguments like this. And the court went on to explain why. A huge part of the reason is the aggregation principle in interstate commerce jurisprudence. The court explained that that principle, quote, does away with the requirement that the individual act at issue must be in interstate commerce or involve movement in interstate commerce. But, Mr. Hendricks, you don't need a broad categorical objection to foreclose this in order to win in this case. You would just need to apply the Harris case to this case. Absolutely. So you don't need some blanket statement that all as-applied statements or challenges are forever barred in the circuit. You don't need that, do you? We don't need that. We don't need that. But you're arguing for that. Well, I think the court has essentially said that in Harris. I think that principle of law already exists. I think that principle of law is valuable to this court, just like it is in the 922G challenges, which this court sees routinely. And we move for some reaffirmance on those challenges. And they say, no, no, no, as-applied. And we say this court has explained that when a gun moves in interstate commerce, that is enough. So if we phrase it as an as-applied or a categorical broad rule, either way, the rule of law prevails. We don't need to get into the nitty-gritty of every case and the facts of every case. If the defendant, like in this case, will plead guilty and stipulate to the facts that constitute the elements of the offense, whether it's here that the car was transported, shipped, or received in interstate commerce, that's enough. Coleman Harris foreclosed the issue as a matter of law, and this court can affirm. But if Harris isn't enough— So take a hypothetical in which neither the automobile nor any of its components ever was anywhere other than the state of Texas. Would the case be different? That case would be dismissed if it were brought by the government. That's my understanding. And there are cases that have done that, where a carjacking case brought a Michigan car, never left Michigan, motion to dismiss, granted. Because as a statutory element, Congress required that the car be shipped, received, or transported in interstate commerce. Maybe there's an argument that some of those car parts traveled, but that's a much tougher case, Judge Smith. And in my research for this argument, I did see district court memorandum opinions granting motions to dismiss on that very ground. So like in Alabama or something where they have car manufacturing plants, they might have those kind of cases. Yes, Your Honor. But I don't know that we have that in Texas. We do. In Arlington, Toyota trucks, it's my understanding, are made. So if a defendant carjacked a Toyota truck that was made in Arlington, that would be a much tougher case. And it's a case, frankly, that because of that added noise, and sadly for the community, because of the other carjackings that are out there, we probably wouldn't dedicate our limited resources to that case. And again, district courts have granted motions to dismiss on that ground. But in addition to Harris, I'd like to speak more broadly about the argument that's being made. The argument that's being made focuses on the item that's transported. And in a Fair Labor Standards Act case, that is the focus. It is a free-to-lay driver who's only delivering around Lubbock, Texas. Is that driver engaged in interstate commerce? That case turns, believe it or not, on whether that bag of chips is still in interstate commerce or not. For carjacking, the focus is not on the item. It's not the car. It's the activity that's being regulated. This court explained that in Coleman. And the activity, Congress made findings that carjacking, of course, substantially affects interstate commerce. It does so because stolen cars are transported across state lines to try to cleanse the title. Sometimes they are chopped for parts. Those parts are sold far and wide. Those parts are hard to follow. Congress viewed this as a nationwide problem that required a nationwide response. Those are specific congressional findings. So don't focus on the item. Focus on the activity. And because of that, this is really, it's spoken as an as-applied challenge. It's really a thinly-veiled facial challenge because Congress has said when you have these following elements, that is carjacking, that is within our congressional power to regulate interstate commerce. That's what the government proved here. The final thing I'll say about this point is if this argument were correct, I don't see how the court could have reached the conclusion it reached in cases like Coleman and Harris because in Coleman and Harris the facts are no materially different than the facts here. In Coleman, it was a local couple driving a Mercedes home to their home in Tyler, Texas. It wasn't a delivery driver for Frito-Lay. A car, there's no evidence, relevant evidence, that that car had been shipped the day before from Michigan or wherever. It's essentially the facts here. It's a local couple driving a car that had previously been shipped, transported, or received. That's it. The same in Harris. Young boys borrow their uncle's car in Harris, drive it locally, get carjacked. The court's focus in Harris and Coleman weren't on the car. It was on the activity, and the activity of carjacking affects interstate commerce. This court can affirm on that ground. On the second issue, again, we have a concession. On the second issue for C-3B, that same issue is pending before the Supreme Court in DiMaia. This court need not rest its sole basis for resolving this case on C-3B if this court chose. It could, in its rightful decision, decide that carjacking has as an element the use, attempted use, or threatened use of force, which is not an issue in DiMaia. And this court has reached that conclusion in the bank robbery setting in Brewer most recently in a published opinion. Bank robbery is substantially similar. It's a taking by force or violence or intimidation like carjacking. The court need not do that, of course, but that issue is right, and cases like Brewer and Buck would support the court's conclusion. Buck was a Hobbs Act case. Am I correct that we would create a circuit split if we did not conclude it that way on the crime of violence issue? If you held that carjacking does not have as an element— That would create a circuit split, wouldn't it? Absolutely, it would. And so if we were to reach the merits of that part of the case and rule for your learned colleague over here, then that would be a—we would be making law. Yes, you would. Every circuit court that has reached carjacking and decided whether carjacking is a crime of violence under 924C has concluded that carjacking, of course, is a crime of violence, and it's done so under C3A, the elements clause. That's Evans in the Fourth Circuit and Inres Smith in the Eleventh Circuit. Are you asking us to do this? I am simply noting that if we rely solely on the concession, right, that it is not—C3B is not unconstitutionally vague. And if DiMaia is affirmed, because the government lost in that case, if DiMaia is affirmed, then that would throw into doubt anyway. It would overrule Gonzales-Lagoria. It would throw into doubt C3—924C3 cases, and we need not do that. You can have an alternative holding here that, like Evans in the Fourth and like Smith in the Eleventh, carjacking also in the Fifth is a crime of violence because it has, at the very least, the threatened use of force. And that satisfies C3A. We don't have to address DiMaia and Johnson and that issue. I just wanted to make that note because DiMaia is pending. It's been arguing, and the opinion should issue by June. Unless the court has any further questions, we ask the court to affirm the district court's judgment. Would you get a do-over in the district court if we were to conclude that carjacking was not a—the record does not support this carjacking? Yes, I think we should. To me, that would be a sea change in the law. It was a conditional plea here just based on the elements of the offense at the time. The Fifth Circuit law provided that this was sufficient. If there were a sea change at X, Y, and Z, it would be plea is revoked, continue on as necessary, and we should—there's the short answer. I'm sorry. Thank you, Mr. Hendricks. Thank you, Justice. May I ask you to save time for a vote? Thank you, Your Honor. I'll be brief. First, let me address the aggregation principle that counsel mentioned. The appellant's reading of the case law regarding aggregation principle applies mainly to commercial cases or civil cases. This case, obviously, is a criminal case. The classic case of aggregation principle being applied is Wicker. I believe that the aggregation principle is not appropriate for this case. The jurisdictional element, and the Supreme Court said this in Lotez, that the purpose of the jurisdictional element is to limit the case to a discrete set of facts. In this case, what we're asking the court to do is apply the jurisdictional element to the discrete set of facts. In this case, we think that the discrete set of facts in this case bring it outside of the Commerce Clause jurisdiction. Regarding the congressional findings, I think I might have mentioned this just briefly. There seems to be some disagreement, I think, on what the congressional findings actually are relating to carjacking. I know our brief cited the Bishop case out of the Third Circuit. The majority in that case, there's a really thorough analysis of carjacking in that case, but the majority seems to give a lot of weight to the congressional findings. However, the dissent in that case written by Judge Becker, his take on the congressional findings is completely opposite of the majority. I would also direct the court to our brief that was filed with the motion to dismiss in the underlying case. We cited several different studies that came to opposite conclusions from Congress. There is some debate, I would say, about the nature of carjacking, the purpose of carjacking, and what exactly typical carjacking looks like. I think typical carjacking is not something that is for selling the vehicle or shopping it for parts. Just like this case, there is no evidence of any of that. Do you want to address the crime of violence point? I think that the Smith case in the Eleventh Circuit and the Evans case in the Fourth Circuit are to the contrary of your position on the merits. And we have – the opposing counsel talked about it. Do you want to talk about it? Just briefly, our central argument, which covered subsection A of 924C, was that carjacking could be accomplished by intimidation and, therefore, that would not require proof of force. I know that the Fifth Circuit recently concluded in the robbery context, and this is in Brewer, that intimidation does involve at least an implicit threat of the use of force. So – and this was just recently, I think within the last six weeks, the Brewer case. So I think we would have a hard time arguing that – which robbery is about as close to analogous to carjacking as it gets. So I think we would have a hard time arguing that intimidation would be something that would benefit the appellant in this case. I appreciate your candor. With that, Your Honor, we would just ask the court to remand the case consistent with the holding of the court. Thank you, Mr. Hatch. Your case is under submission.